Filed 5/7/21  P. v. Giles CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B307532 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA036909) |
| v. | |
| DELONNE TRYICE GILES, | |
| Defendant and Appellant. | |

THE COURT:

Delonne Tryice Giles appeals the trial court's denial of his petition to be resentenced for murder under Penal Code section 1170.95.[1]  The order is appealable.  (§ 1237, subd. (b).)  Giles's attorney filed a brief raising no issues and asked this court to independently review the record.  Giles submitted a supplemental brief on his own behalf.  On March 10, 2021, this court summarily dismissed the appeal.  Counsel then petitioned

---

[1]  Undesignated statutory references are to the Penal Code.

for rehearing.  We vacated the dismissal and now address the appeal on the merits.

In 1997, Giles was convicted by jury of first degree murder and four counts of attempted murder.  (§§ 187, 189.)  The jury found Giles "was a principal" and the attempted murders were "willful, deliberate and premeditated."  He was sentenced to 26 years to life for the murder and four concurrent life terms for the attempted murders.  His appeal from the judgment was decided by this court in *People v. Giles et al.* (Jan. 19, 2000, B118121) [nonpub. opn.] (*Giles*).[2]

Giles is a Crips member.  In December 1996, he drove past the Aguirre brothers, who are members of rival gang Willows.  The Aguirres were chatting on the sidewalk with two friends.  A passenger in Giles's Hyundai fired multiple times from the car, until his gun jammed.  A bullet struck and killed five-year-old Oscar Vega, who was near the intended victims.  Police found three nine-millimeter cartridge cases and two expended "full metal jacket" bullets at the scene.  (*Giles, supra,* B118121.)

Shortly after the shooting, Giles and codefendant Sean Bytheir arrived at Victoria Dickson's apartment with two other Crips.  Giles paced nervously as they discussed a little boy shot in a "ride-by" and the large police presence in the area.  Giles said his green Hyundai was parked on Santa Fe Avenue and gave the keys to Dickson.  That night, Bytheir retrieved the car keys and discussed a plan to burn the car.  (*Giles, supra,* B118121.)

The Aguirre brothers knew Giles.  They identified him as the driver of the Hyundai, as did a neighbor who was washing his car nearby.  The morning after the shooting, the Hyundai was

---

[2] We granted Giles's request to take judicial notice of the record in the direct appeal.

found burning in Long Beach.  The owner of the car had "rented" it to Giles and another man.  (*Giles, supra,* B118121.)

In videotaped statements, a friend of Giles and Bytheir told police that the codefendants took two nine-millimeter handguns and "left to go do [the] dirt," i.e., shoot at rival gang members.  They drove away in a green car Giles was "renting."  Giles was the driver and Bytheir was the passenger.  They returned 15 to 20 minutes later saying they "dumped on Willows," i.e., they fired shots at rival gangsters.  Another of the codefendants' friends told police that Bytheir was upset because he shot at rivals and inadvertently killed a child.  (*Giles, supra,* B118121.)

During the investigation, police retrieved a nine-millimeter handgun from one of the codefendants' friends, who purchased it after the shooting.  An expert determined that the bullets police found at the scene were fired from the weapon.  During a search, three live nine-millimeter full metal jacket rounds were found in the pocket of clothing belonging to Giles.  (*Giles, supra,* B118121.)

Giles told police he was at an unemployment office when the shooting occurred and claimed he had not driven the Hyundai recently.  Surveillance video showed Giles was not at the unemployment office.  (*Giles, supra,* B118121.)

Giles petitioned for resentencing in May 2019, declaring that he was convicted "pursuant to the felony murder rule or the natural and probable consequences doctrine."  The court appointed counsel for Giles.  The People replied to the petition.

After reviewing the record of conviction and holding a hearing, the court denied Giles's petition.  It found no prima facie showing of eligibility for relief.  Giles was not convicted under a felony murder theory or the natural and probable consequences doctrine.  The court said this is a "classic drive-by shooting" in

3

which Giles "knew he was driving the shooter into a rival gang's territory for the specific purpose to shoot and kill multiple victims"; he directly aided and abetted the murder and attempted murders, had the same intent as the shooter and was a major participant in the crime.

"A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition . . . to have the petitioner's murder conviction vacated and to be resentenced." (§ 1170.95, subd. (a).) Giles was not charged with or convicted of felony murder: No underlying felony (such as robbery) was underway when the killing occurred. (§ 189, subd. (a).) The court refused to instruct on the natural and probable consequences doctrine. (CALJIC No. 3.02.)

Giles could be convicted of murder despite recent changes to the murder statutes. (§ 1170.95, subd. (a)(3).) A participant is liable if he "was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree." (§ 189, subd. (e)(2).) Changes to the murder statute did not alter the criminal liability of accomplices because such persons necessarily "know and share the murderous intent of the actual perpetrator." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117–1118.)

Here, "the jurors were required to find that Giles, as an aider and abettor, had knowledge of Bytheir's unlawful purpose and intended or had the purpose of committing or encouraging or facilitating the commission of the crime of murder. [¶] The facts of this case indicate Giles had the same intent, purpose and motive as Bytheir. The evidence showed that both Giles and

4

Bytheir intended to shoot at men they thought to be Willows." (*Giles, supra,* B118121.)

Giles does not qualify for resentencing under section 1170.95 as a matter of law. His declaration in the petition that he qualifies for relief is belied by the record of conviction. In his supplemental brief, Giles admits, "[t]he jury was neither instructed on felony-murder nor on a natural and probable consequences theory of culpability. And none of the attorneys argued either of those theories during the presentation of their respective cases." He thereby concedes that his petition wrongly declares otherwise.[3]

## DISPOSITION

The order denying postconviction relief is affirmed.

NOT TO BE PUBLISHED.

_____

LUI, P.J.        ASHMANN-GERST, J.        CHAVEZ, J.

_____

[3] Giles denies that he "had the same intent as the shooter." However, jurors had "to find that appellants each harbored 'express malice aforethought, namely, a specific intent to kill.'" (*Giles, supra,* B118121.) Giles argued on direct appeal that his conviction was wrongly based on Bytheir's mental state. We wrote, "the record on appeal shows that Giles had the same intent and mental state as Bytheir." (*Ibid.*)

5